# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: AVEO Pharmaceuticals, Inc. Securities Litigation | ) Civ. A. No. 1:13-cv-11157-DJC<br>)<br>) <u>CLASS ACTION</u><br>)<br>) |
| This Document Relates To<br>ALL CASES | ) Hon. Denise J. Casper<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**SHAPIRO HABER & URMY LLP**
Seaport East
Two Seaport Lane
Boston, MA 02210
Tel. (617) 439-3939
Fax (617) 439-0134

**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: (312) 377-1181
Fax: (312) 377-1184

*Counsel for Lead Plaintiffs and the Class*

i

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS............................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I. The Class Should Be Certified Pursuant To Federal Rule Of Civil Procedure 23 ............... 4

  A. The Rule 23(a) Requirements Are Satisfied.................................................. 6

    1. The Proposed Class Is So Numerous That Joinder Is Impracticable ......................... 6

    2. Questions of Law or Fact Are Common to the Class.................................................. 7

    3. Plaintiffs' Claims Are Typical of the Class ............................................................... 7

    4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.................... 8

  B. This Action Should Be Maintained as a Class Action Under Rule 23(b)(3)................. 9

    1. Common Questions of Law and Fact Predominate .................................................... 9

      a. Reliance Is Presumed Because Defendants Committed a Fraud-on-the-Market .. 10

      b. AVEO's NASDAQ Listing Is Strong Evidence Of Market Efficiency .............. 10

      c. The Five *Cammer* Factors Unanimously Confirm Market Efficiency................. 11

        1. Trading Volume ..................................................................................... 12

        2. Analyst Coverage .................................................................................. 13

        3. Market Makers ...................................................................................... 13

        4. S-3 Eligibility ....................................................................................... 14

        5. Cause and Effect.................................................................................... 14

      d. Reliance Is Also Presumed Under *Affiliated Ute*. ............................................... 16

      e. Mechanical Damage Tabulations Will Not Threaten Predominance .................. 16

    2. Class Treatment Is Superior To Other Means Of Adjudication ............................. 17

II. Pomerantz Should Be Appointed Class Counsel ............................................................. 18

CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) ............................................. 16

*Amchem Products, Inc., v. Windsor*, 521 U.S. 591 (1997) ....................................... 4, 8, 9, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ........................... 5, 6

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985)............................................. 8

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ............................................................. 1, 10, 11

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999) ................................................................ 16

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ............................................................ 7, 16

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) .................................... 11, 12, 13, 14, 15

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69
(S.D.N.Y. 2015) .................................................................................................................. 16

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,
LLC*, 504 F.3d 229 (2d Cir. 2007) ........................................................................................ 6

*Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295 (S.D.N.Y. 1990) ........................... 5

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) (“*Halliburton I*”) ............. 6

*Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176 (S.D.N.Y. 2005) ............................................ 16

*Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997)........................................ 8

*Grace v. Perception Tech. Corp.*, 128 F.R.D. 165 (D. Mass. 1989) ........................................ 6

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ......................... 1, 10, 15

*In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275 (D. Mass. 2009) .................... *passim*

*In re Carbon Black Antitrust Litig.*, No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660
(D. Mass. Jan. 18, 2005) ....................................................................................................... 8

*In re Charter Communications, Inc. Sec. Litig.*, No. 02-cv-01186-CAS (E.D. Mo.) ............ 18

*In re Comverse Technology, Inc. Sec. Litig.*, No. 06-cv-1825, Dkt. No. 347
(E.D.N.Y June 24, 2010) ..................................................................................................... 18

*In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17 (D. Mass. 2008) ..................................... 6

*In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240 (N.D. Cal. 2013) ...................... 16, 17

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382
(D. Mass. 2011) ...........................................................................................................6, 17

*In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450-CRN (N.D. Ill.) ........................................ 18

*In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476 (S.D.N.Y. 2002) ................... 4

*In re JPMorgan Chase & Co. Secs. Litig.*, 12 Civ. 03852, 2015 U.S. Dist. LEXIS 132181
(S.D.N.Y. Sep. 29, 2015) ........................................................................................... 17

*In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, No. 13-cv-157-AWA, Dkt. No. 204
(E.D. Va. Nov. 17, 2016) ........................................................................................... 18

*In re Merck & Co., Inc., Sec., Deriv. & ERISA Litig.*, MDL No. 1658 (SRC), 2013 U.S.
Dist. LEXIS 13511 (D.N.J. Jan. 30, 2013)................................................................. 9

*In re Nature's Sunshine Prods. Inc. Sec. Litig.*, 251 F.R.D. 656 (D. Utah 2008) ................. 13

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) ........... 7

*In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005)............................................. 11

*In re Xcelera.com Sec. Litig.*, 430 F.3d 503 (1st Cir. 2005) ......................................... 12, 15

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, No. Civ. A. 01-10729, 2004 U.S.
Dist. LEXIS 3701 (D. Mass. Mar. 9, 2004) .............................................................. 4

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014)................................................................................. 14

*Lumen v. Anderson*, 280 F.R.D. 451 (W.D. Mo. 2012) ........................................................ 11

*McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415 (S.D.N.Y. 2014)........ 12

*Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135
(D.R.I. Feb. 17, 2016) .............................................................................................. 8

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21 (D. Mass. 2003) ................................ 7

*Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336 (C.D. Cal. 2015)...................................... 13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......................................................... 5

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) .................................................... 16

*Smilovits v. First Solar, Inc.*, 295 F.R.D. 423 (D. Ariz. 2013) ............................................. 11

*Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32 (1st Cir. 2003) ............................ 5, 16

*Smith v. Ayres*, 845 F.2d 1360 (5th Cir. 1988) ....................................................................... 16

*Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005) .................... 6, 7, 8, 17

*Teamsters Local 445 Frgt. Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196
(2d Cir. 2008) ............................................................................................................................ 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................................ 5

*Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2017 U.S. Dist. LEXIS 1919
(C.D. Cal. Jan. 5, 2017) ........................................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................ 5

Lead Plaintiffs Robert Levine and William Windham ("Plaintiffs"), by their attorneys and pursuant to Federal Rule of Civil Procedure 23, respectfully submit this memorandum of law in support of their motion for class certification.

## INTRODUCTION

This lawsuit is a textbook example of a case warranting class action treatment. Plaintiffs seek to prove that, like other Class members, they were injured by a common course of misconduct – Defendants' omissions from their statements to investors of highly material, adverse information regarding their regulatory communications with the United States Food and Drug Administration ("FDA"). As in most securities fraud class actions, virtually all relevant questions of law and fact are identical for all Class members and susceptible to common proof. For this reason, courts have consistently recognized that class treatment is ". . . particularly appropriate in the context of securities litigation." *In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 280 (D. Mass. 2009).

The case for certification is even stronger here than in most securities fraud actions. Proposed Class representatives have demonstrated over three years of vigorous litigation that they will zealously represent the interests of absent Class members, and there is overwhelming evidence of market efficiency, allowing reliance to be presumed under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) and *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014) ("*Halliburton II*"). As is demonstrated by the Expert Report of Dr. Zachary Nye ("Nye Report"), shares of AVEO Pharmaceuticals, Inc. ("AVEO" or the "Company") both traded in a generally efficient market, and exhibited a highly statistically-significant reaction to the specific disclosures involved in this case. *See* Nye Report, ¶¶10-52 and Exh. 13, attached as Exhibit A to Declaration of Joshua B. Silverman ("Silverman Decl."), filed herewith. Quite simply, there is no threat that individual issues of reliance or any other matter will predominate at trial over the extensive common issues.

Because the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are clearly

met, Plaintiffs respectfully request that the Court certify the following Class:

> All persons or entities who purchased or acquired shares of AVEO or the Company common stock (ticker symbol AVEO) between May 16, 2012 and May 1, 2013, both dates inclusive (the "Class Period").  Excluded from the Class are (1) Defendants and their immediate families, (2) any entity in which Defendants have or had a controlling interest, (3) current and former officers, directors and employees of AVEO, and (4) the legal representatives, heirs, successors, or assigns of any excluded party.

Plaintiffs also seek appointment as Class Representatives and the appointment of Pomerantz LLP ("Pomerantz") as Class Counsel and Shapiro Haber & Urmy LLP as Liaison Counsel for the Class.

## STATEMENT OF FACTS

This case is a federal securities fraud class action arising from Defendants' omissions in their statements to investors of highly damaging regulatory communications regarding AVEO's only advanced stage drug candidate, tivozanib.  On May 11, 2012, Defendants AVEO and William Slichenmyer ("Slichenmyer") had a crucial formal meeting with the FDA to discuss their planned new drug application ("NDA") for tivozanib.  It did not go well.  At the May 11, 2012 Pre-NDA meeting, the FDA:

(1) recommended that AVEO conduct a second pivotal clinical trial in an appropriate patient population, due to flaws and inconsistencies in its sole phase III trial, TIVO-1;

(2) expressed serious concern about the higher death rate in the tivozanib arm of TIVO-1;

(3) criticized the Company's decision to modify TIVO-1 to include a one-way crossover not discussed with the FDA during pre-trial planning meetings;

(4) questioned whether AVEO should even file an NDA in light of the compromised TIVO-1 study; and

(5) warned that the defective design of the TIVO-1 study made it difficult to tell whether tivozanib was "toxic."

2

¶¶10, 81-87.[1]

The FDA's positions, and in particular its request for a second clinical trial, were devastating. Immediately after the meeting, Defendant Slichenmyer prepared a PowerPoint presentation to brief Defendants Tuan Ha-Ngoc, David N. Johnston and the remainder of AVEO's "executive committee" at an emergency meeting. ¶82. Slichenmyer's PowerPoint warned that failing to adhere to the FDA recommendation to conduct a second clinical trial prior to approval would create a "*high risk…of Non-approval.*" ¶85. A subsequent PowerPoint presentation conceded that the FDA had warned that it would be "in [AVEO's] best interest to start another randomized trial," and that the inconsistent results of the TIVO-1 trial did not support approval under FDA standards. ¶91.

Only days after the FDA meeting and AVEO's emergency executive committee meeting, Defendants began to make materially false and misleading statements to investors. For example, they repeatedly discussed the TIVO-1 trial and planned NDA without mentioning that the FDA had requested a second trial, strongly criticized the scientific misconduct in TIVO-1, and expressed concern that tivozanib might be toxic. *See*, *e.g.*, ¶¶88-90, 92-94. Defendants also scripted and practiced conference call responses designed to dodge questions about the adverse regulatory developments. ¶101.

Internally, Defendants acknowledged the importance of the FDA's request. They promptly planned and budgeted for a second trial, which they expected would take three years to complete and cost $83 million. ¶86. AVEO informed the FDA that it would conduct the second study, and requested another meeting with the FDA to discuss its proposed study design. ¶96. However, after the FDA refused to rubber-stamp the flawed study design proposed by AVEO, Defendants

---

[1] ¶__ citations herein are to Plaintiffs' Third Consolidated Amended Complaint for Violations of Federal Securities Laws (Dkt. No. 117) ("TAC").

declined to even meet with the FDA.  ¶110.  AVEO's partner, Astellas Pharmaceuticals, warned Defendants that the issues to be discussed in the planned FDA meeting were "directly relevant to the timing and probability for approval. . . "  *Id.*

Throughout the Class Period, Defendants hid the most damaging regulatory communications from investors.  ¶¶88-143.  They did not tell investors, *inter alia*, that the FDA had requested a second study, that the Company understood that filing an NDA without a second study would create a "high risk of. . . Non-approval," or that the Company had told the FDA it would conduct a second study.  ¶¶85, 88-90, 96.  In the beginning of the Class Period, Defendants also hid altogether that the FDA had expressed concerns regarding overall survival in the TIVO-1 study.  ¶¶88-90.

## ARGUMENT

**I.  The Class Should Be Certified Pursuant To Federal Rule Of Civil Procedure 23.**

"There is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end."  *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, No. Civ. A. 01-10729, 2004 U.S. Dist. LEXIS 3701, at *5 (D. Mass. Mar. 9, 2004) (internal citations and quotation marks omitted); *see also In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d at 280 ("Courts have recognized that class actions may be particularly appropriate in the context of securities litigation.") (internal citations omitted). In a securities fraud action, if a court is in doubt as to whether to certify a class action, it should err in favor of certification.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (internal citations omitted).

To certify a putative class, the Court must determine whether four threshold requirements of Fed. R. Civ. P. 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy

of representation. *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 613-14 (1997).  In addition, the Court must determine whether the action is maintainable under Fed. R. Civ. P. 23 (b)(1), (2) or (3).  *Id.*  ". . . [T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."  *Teamsters Local 445 Frgt. Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

The prerequisites under Fed. R. Civ. P. 23 "should be construed in light of the underlying objectives of class actions."  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 41 (1st Cir. 2003) (internal citations omitted).  "Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  This is particularly important in securities cases, where the Supreme Court has recognized that "meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . "  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Indeed, "[t]here is a strong public policy in favor of private enforcement of the nation's securities laws . . . A class action is both an effective and appropriate method for resolving securities law claims."  *Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295, 298 (S.D.N.Y. 1990) (citations omitted); *see also In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d at 280.

While courts must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 390-91 (2011), "[r]ule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

5

*Id.* at 1195.   Accordingly, while it is appropriate to consider whether a securities market was efficient to support a presumption of reliance, it is not appropriate to delve into merits issues such as scienter, materiality or loss causation.   *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812-813 (2011) ("*Halliburton I*"); *see also Amgen Inc.*, 133 S. Ct. at 1193-94.

### A.  The Rule 23(a) Requirements Are Satisfied.

#### 1.  The Proposed Class Is So Numerous That Joinder Is Impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable."   Fed. R. Civ. P. 23(a)(1).   Impracticable means difficult, not impossible.   *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).   While a plaintiff need not allege the exact number or identity of class members, *see Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005), "forty class members generally establishes numerosity." *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (internal citations omitted). According to AVEO's Annual Report filed with the Securities and Exchange Commission ("SEC") on Form 10-K, it has 88 holders of record, with an actual number of shareholders likely several times that amount.[2]

Moreover, in securities class actions, "[c]ourts routinely find the numerosity requirement satisfied based on the number of shares outstanding and the average trading volume during the class period." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 22 (D. Mass. 2008) (citing *Swack*, 230 F.R.D. at 258 and *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989)).   On average, 2,612,848 million AVEO shares traded each week during the Class Period, and more than 43 million shares were outstanding.   *See* Exhibit A, Nye Report at ¶21.

---

[2] In the United States, the overwhelming percentage of shares are held in "street name" by a broker, who is counted as a single "holder of record" for all of its clients.

Accordingly, Plaintiffs believe that there are many hundreds, if not thousands, of Class members, making joinder impracticable.

## 2. Questions Of Law Or Fact Are Common To The Class.

The First Circuit has described the commonality requirement of Rule 23(a)(2) to be a "low bar" subject to "permissive application." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008) (internal citations and quotation marks omitted). "Because '[a] <u>single</u> common legal or factual issue can suffice' to satisfy the 23(a)(2) requirement, 'the commonality requirement ordinarily is easily met.'" *Swack*, 230 F.R.D. at 259 (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003)) (emphasis in original). Federal courts have long recognized that commonality is self-evident in most Section 10(b) cases:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (citations omitted).

Here, the TAC describes a "common course of conduct," whereby the same public misrepresentations and omissions were made to all investors. Common questions of fact and law in this action include falsity, scienter, loss causation, and the proper measure of damages. "[T]hese questions are of the sort that have been found by other courts to demonstrate the requisite commonality under Rule 23(a)(2)." *Swack*, 230 F.R.D. at 260 (collecting cases).

## 3. Plaintiffs' Claims Are Typical Of The Class.

Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of the claims of the class. However, the Rule "does not mandate that the claims of the class representative be identical to those of the absent class members." *Swack*, 230 F.R.D. at 260.

Instead, a proposed representative's claims are typical where, as here, "(1) the injuries of the proposed class representative[s] arise from the 'same events or course of conduct' as the injuries giving rise to the class claims, and (2) [their] claims and those of the class are based upon the same legal theory." *Id.* at 262-63 (citing *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997)).

In this case, Plaintiffs' injuries arise from the exact same course of conduct as the injuries of absent Class Members, and are based on the exact same legal theories.  Like absent Class Members, Plaintiffs purchased AVEO stock at artificially inflated prices due to misrepresentations and omissions that Defendants made to the market as a whole, and were injured when the truth began to surface.  ¶¶88-165, 172-180.  Proof of these allegations will be common to all Class Members.  Thus, typicality is satisfied.  *See In re Boston Sci. Corp.*, 604 F. Supp. 2d at 282.

## 4. **Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class.**

The Rule 23(a)(4) requirement that "the representative parties will fairly and adequately protect the interests of the class" is unquestionably met.  Fed. R. Civ. P. 23(a)(4).  The First Circuit employs "a two part test: 'the moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Swack*, 230 F.R.D. at 265 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)) (other citations omitted).  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625 (citation omitted).  Significantly, speculative or hypothetical conflict will not defeat certification. *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135, at *10-11 (D.R.I. Feb. 17, 2016).  Instead, to impact adequacy the "conflict must be such that the plaintiff's interests are placed in significant jeopardy." *In re Carbon Black Antitrust*

*Litig.*, No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660, at *58-59 (D. Mass. Jan. 18, 2005) (internal quotation marks and citations omitted).

Here, Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members," *Amchem Prods., Inc.*, 521 U.S. at 625-26, and no actual or potential conflicts exist. Plaintiffs and all Class members have suffered losses from purchasing AVEO shares at artificially inflated prices. They have been injured by the identical omissions and misrepresentations. Each has been actively involved in this litigation and has previously certified his willingness to serve as a representative party. *See* Dkt. 21-2, Ex. B at 2-9.

Plaintiffs have engaged qualified, experienced and capable attorneys. Proposed Class Counsel are highly experienced in complex class litigation, especially securities fraud actions, and have the ability and willingness to prosecute this action vigorously. *See infra*, at 18; Silverman Decl., Ex. B (Pomerantz Firm Resume) and Ex. C (Shapiro Haber & Urmy Resume).

**B.  This Action Should Be Maintained As A Class Action Under Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and that a class action is superior to other available methods of adjudication.   *See* Fed. R. Civ. P. 23(b)(3).  Both of the Rule's requirements have been met here.

**1.  Common Questions Of Law And Fact Predominate**

Predominance "is readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc.*, 521 U.S. at 625.  In securities fraud cases, ". . . Defendants' liability will depend on the same evidence relating to the materiality of the misstatements and omissions at issue and Defendants' state of mind in making such statements or failing to disclose certain information . . . In addition . . . loss causation for the putative class is also capable of proof through common evidence." *In re Merck & Co., Inc., Sec., Deriv. & ERISA Litig.*, MDL No. 1658 (SRC), 2013 U.S. Dist. LEXIS 13511, at *63 (D.N.J. Jan. 30, 2013).

Moreover, as is established below, reliance is presumed under the facts of this case, and mechanical damage tabulations will not predominate over common issues at trial.

**a. Reliance Is Presumed Because Defendants Committed A Fraud-on-the-Market.**

In well-developed securities markets like the market for AVEO, a misleading statement or omission of material fact is incorporated in the price of a stock. *Halliburton II*, 134 S. Ct. at 2420-21 (discussing *Basic*, 485 U.S. at 231). ". . . [A]n investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247.

*Basic* gave several reasons for adopting the fraud-on-the-market presumption. First, the presumption furthered the public interest in private enforcement of securities laws, by preserving investors' ability to proceed on a class basis. *Id.* at 242; *Halliburton II*, 134 S. Ct. at 2407-08. Second, it reflected the way that modern securities markets operated, where investors buy and sell anonymously via exchanges rather than in individualized transactions. *Basic*, 485 U.S. at 244-45. Third, investors rely on the market price, because they rely on the assumption that information incorporated into it was true. *Id.* at 247.

In *Halliburton II*, the Supreme Court confirmed that the fraud-on-the-market presumption is based on the "fairly modest premise that market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." 134 S. Ct. at 2410 (quotation and citation omitted). It is not tied to any academic strain of market efficiency. *Id.* Accordingly, "[d]ebates about the precise *degree* to which stock prices accurately reflect public information are thus largely beside the point." *Id.* (emphasis in original).

**b. AVEO's NASDAQ Listing Is Strong Evidence Of Market Efficiency**

10

Throughout the Class Period, AVEO shares were listed and traded on the NASDAQ Global Select Market, which is the preeminent tier of the broader NASDAQ Stock Market. Nye Report at ¶ 15. Congress, the Supreme Court, and the seminal decision in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) all recognize that such well-developed markets are generally efficient in reflecting publicly-available information in the prices of securities traded on those markets. In *Basic*, the Supreme Court noted that in "drafting [the 1934] Act, Congress expressly relied on the premise that securities markets are affected by information, and enacted legislation to facilitate an investor's reliance on the integrity of those markets." 485 U.S. at 246. *See also Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 430-431 (D. Ariz. 2013) (discussing same). Similarly, *Cammer* quoted with approval treatise commentary that "there should be a presumption -- probably conditional for class determination -- that certain markets are developed and efficient for virtually all the securities traded there: the New York and American Stock Exchanges, the Chicago Board Options Exchange and the NASDAQ National Market System." 711 F. Supp. at 1292. Consistent with *Cammer* and *Basic*, most courts to consider the issue have concluded that a NASDAQ listing is a strong indication of market efficiency. *See, e.g., Lumen v. Anderson*, 280 F.R.D. 451, 459-460 (W.D. Mo. 2012) (cases "too numerous to cite. . . establish the NYSE and NASDAQ are at least entitled to a *presumption* of efficiency — making it incumbent upon Defendants to rebut the presumption.") (emphasis in original).

### c.   The Five *Cammer* Factors Unanimously Confirm Market Efficiency.

In the First Circuit, a market is deemed efficient for purposes of the fraud-on-the-market theory if it is "informationally efficient." *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 16 (1st Cir. 2005). This means that market prices "respond so quickly to new information that it is impossible for traders to make trading profits on the basis of that information." *Id*. at 14 (internal quotation omitted). It is not necessary for the market at issue also to have "fundamental value

efficiency," which is found where "market prices mirror the best possible estimates . . . of the actual economic values of securities in terms of their expected risks and returns." *Id.* at 15 (internal quotations omitted).

To evaluate whether the market for a particular security is efficient, the First Circuit and most other Circuits rely on the factors enumerated in *Cammer*. *See In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 511 (1st Cir. 2005). The *Cammer* factors are: (1) the stock's average trading volume; (2) the number of securities analysts that followed and reported on the stock; (3) the presence of market makers and arbitrageurs; (4) the company's eligibility to file a Form S-3 Registration Statement; and (5) a cause-and-effect relationship, over time, between unexpected corporate events or financial releases and an immediate response in stock price. *See id.* (citing *Cammer*, 711 F. Supp. at 1286-87); *In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. at 283-84. These factors are "meant to be an analytical tool to assist in the evaluation of market efficiency, not a rigid checklist." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 432 (S.D.N.Y. 2014). Regardless, in this case, every *Cammer* factor inescapably confirms that AVEO shares traded in an efficient market during the Class Period.

### 1. Trading Volume

Significant trading volume represents one of the most important indicia of an open and developed market because it implies "investor interest" in the company, increasing the "likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *Cammer*, 711 F. Supp. at 1286. Generally, a weekly turnover of more than 1% of outstanding shares warrants a "substantial presumption" of an efficient market, and a weekly turnover of more than 2% of outstanding shares creates a "strong presumption." *Id.* at 1292-93.

AVEO was an extremely liquid stock with a weekly turnover that was more than twice the threshold necessary to establish a "strong presumption" of efficiency under *Cammer*. Each week

during the Class Period, investors traded on average 2.61 million shares, or 5.5% of the average number of shares outstanding. Nye Report, ¶21.  Thus, Plaintiffs are entitled to a "strong presumption" that AVEO's shares traded in an efficient market.  *Cammer*, 711 F. Supp. at 1292-93.

### 2.  Analyst Coverage

Also persuasive to the efficient market analysis is a "significant number of securities analysts [that] followed and reported on a company's stock during the class period" because "the market price of the stock would be bid up or down to reflect [] financial information . . .  as interpreted by the securities analysts."  *Id.* at 1286.  Here, eleven (11) well-known investment firms issued research on AVEO during the Class Period.  Nye Report, ¶27.  Bloomberg identified three additional firms as providing analyst coverage regarding AVEO, and at least two other additional firms participated in AVEO's conference calls.  *Id.*  Additionally, AVEO was extensively covered in the financial and biopharmaceutical press, and its SEC filings were available online for all investors.  *Id.* at ¶¶28-29.

While, [t]here is no bright-line rule regarding how many analysts it takes to constitute a 'significant' number," *see Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 350 (C.D. Cal. 2015), courts have repeatedly held that far more sparse coverage satisfies the second *Cammer* factor.  *See, e.g.*, *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2017 U.S. Dist. LEXIS 1919, at *20 (C.D. Cal. Jan. 5, 2017) (six analysts sufficed); *In re Nature's Sunshine Prods. Inc. Sec. Litig.*, 251 F.R.D. 656, 663 (D. Utah 2008) (coverage by four analysts over the course of a year was sufficient).  Consequently, especially when considered in the context of AVEO's broad news coverage, *Cammer*'s second factor supports a finding of market efficiency.

### 3.  Market Makers

*Cammer* also considered the presence of market makers as a sign of an open and developed market because they help facilitate arbitrage.  711 F. Supp. at 1286-87.  A large number of market makers implies that many market participants are trading that particular stock, which generally provides a high degree of liquidity and a narrower bid-ask spread.  With a large number of market makers, it is generally easy for investors to execute trades in a timely fashion and with reasonable transaction costs.  Here, 152 separate market makers facilitated trading in AVEO shares during the Class Period.  Nye Report, ¶33.

Moreover, market characteristics confirm the existence of arbitrageurs, which are also recognized to support market efficiency.  There were no constraints to the short-selling of AVEO shares that could impair arbitrage activity.  *Id.* at ¶¶34-41.  Further, AVEO shares traded at a much narrower bid/ask spread than typical NASDAQ stocks, suggesting that any pricing differences were effectively arbitraged away by market participants.  *Id.*  These facts, combined with AVEO's trading status on the NASDAQ—one of the most renowned, most liquid, and most efficient forums for trading stocks in the world—indicate an efficient market.

### 4.  S-3 Eligibility

*Cammer* also noted that eligibility under SEC rules to register shares for sale to investors on Form S-3 was an "important factor weighing in favor of a finding that a market is efficient." 711 F. Supp. at 1284-85; *see also Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 (11th Cir. 2014) (finding that the company's eligibility to file a Form S-3 lent "credibility to its market efficiency finding"). Form S-3 registration is limited to established companies subject to higher disclosure and float requirements. *Id.* Here, AVEO not only was Form S-3 eligible throughout the Class Period, but did in fact file Form S-3 registration statements both before and after the Class Period.  Nye Report, ¶45.

Thus, the fourth *Cammer* factor also supports a finding of market efficiency.

### 5.   Cause And Effect

The final factor, which assesses price reaction to important news events, was considered by the *Cammer* court to be "the essence of an efficient market and the foundation for the fraud on the market theory." 711 F. Supp. at 1287.  Courts often find this to be the "most important" *Cammer* factor in analyzing market efficiency. *See In re Xcelera.com*, 430 F.3d at 512.  To assess this factor, Dr. Nye conducted an event study on daily stock prices.  Nye Report, ¶¶46-52 and Exh. 13. Dr. Eugene Fama, the "father of the efficient capital market hypothesis," explained that such studies provide the "cleanest evidence" of market efficiency:

> The cleanest evidence on market-efficiency comes from event studies, especially event studies on daily returns. When an information event can be dated precisely and the event has a large effect on prices, the way one abstracts from expected returns to measure abnormal daily returns is a second-order consideration.  As a result, event studies can give a clear picture of the speed of adjustment of prices to information.

Eugene F. Fama, *Efficient Capital Markets: II*, 46 J. Fin. 1575, 1607 (1991).  Event studies are commonly utilized to assess market efficiency in securities fraud cases.  *See, e,g.*, *Halliburton II*, 134 S. Ct. at 2415.

Here, Professor Nye's event study reveals that AVEO's public disclosures of new, value-relevant information caused immediate and significant price reactions—evidencing an efficient market. *See id.* at 2415 (". . . [P]laintiffs themselves can and do introduce evidence of the *existence* of price impact in connection with 'event studies'—regression analyses that seek to show that the market price of the defendant's stock tends to respond to pertinent publicly reported events.") (emphasis in original); *In re Xcelera.com*, 430 F.3d at 513 n.11 (finding market efficiency where " . . . event study capture[d] the same-day reaction to Xcelera's stock price to company-specific events . . . ").  Notably, Dr. Nye found that AVEO's stock reacted consistent

with an efficient market in each of the events he studied.   Nye Report, ¶¶51-52 and Exh. 13.

Moreover, all three alleged corrective disclosures resulted in price declines that were statistically

significant at the 100.0% confidence level.[3]  Nye Report, Exh. 13.  Accordingly, there can be no

question that AVEO both traded in a generally efficient market, _and_ that it responded efficiently

with respect to the specific disclosures at issue in this case.  *Id.*

### d.  Reliance Is Also Presumed Under *Affiliated Ute*.

Under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972), the omission

of a material fact by a defendant with a duty to disclose establishes a rebuttable presumption of

reliance.  The presumption reflects " . . . the reality that a person cannot rely upon what he is not

told."  *Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988).  In this case, the TAC focuses almost

exclusively on fraudulent omissions, rather than affirmative misrepresentations.  Specifically, it

alleges that Defendants omitted from investors damning regulatory information learned during a

May 11, 2012 meeting with the FDA, under circumstances that required the disclosure of such

information.  ¶¶ 81-87, 88-143.   Consequently, reliance is also presumed under *Affiliated Ute.*

*See, e.g.*, *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999); *Fogarazzo v. Lehman Bros.*,

232 F.R.D. 176, 186-87 (S.D.N.Y. 2005).

### e.  Mechanical Damage Tabulations Will Not Threaten Predominance.

Where, as here, liability can be proved class-wide, it is "'well-established'" that individual

tabulation of damages "is not sufficient to defeat class certification under Rule 23(b)(3)."  *Roach*

*v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation omitted); *Smilow*, 323 F.3d at 40

("The individuation of damages in consumer class actions is rarely determinative under Rule

23(b)(3)."). This is especially true for securities fraud cases, where the process of computing

damages after liability is established is "virtually a mechanical task."  *In re Diamond Foods, Inc.,*

---

[3] Calculated to the first decimal place.

*Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013); (*quoting Blackie*, 524 F.2d at 905). *See also Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 74 (S.D.N.Y. 2015) ("[I]ssues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases."). For this reason, courts do not require a formal damages model to demonstrate that damages can be determined on a classwide basis. Instead, to the extent any evidence is required, an event study like that provided by Dr. Nye will suffice. *See, e.g., In re JPMorgan Chase & Co. Secs. Litig.*, 12 Civ. 03852, 2015 U.S. Dist. LEXIS 132181, *23-24 (S.D.N.Y. Sep. 29, 2015); *Diamond Foods*, 295 F.R.D at 251-52.

**2.   Class Treatment Is Superior To Other Means Of Adjudication**

Rule 23(b)(3) requires that a "class action is 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Swack*, 230 F.R.D. at 273 (quoting Fed. R. Civ. P. 23(b)(3)). Superiority ensures that class treatment ". . . would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615. As another court in this District explained, all of the superiority factors identified in Fed. R. Civ. P. 23(b)(3) are readily satisfied in securities fraud actions:[4]

> Given the size of the proposed class in this case, it is clear that piecemeal adjudication of claims covering substantially similar issues would be an inefficient allocation of court resources. Class certification in this case is also superior to other methods because, in accordance with the 'core purpose' of Rule 23(b)(3), it will provide the opportunity for individual investors to vindicate potentially valid claims, even where those investors suffered relatively small damages and have insufficient resources to pursue litigation on their own.

---

[4]  Fed. R. Civ. P. 23(b)(3) lists the following matters as "pertinent" to superiority: A) the class members' interests in individually controlling the prosecution . . . of separate actions; B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties to be encountered in managing a class action.

*In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d at 287-88; *see also In re Evergreen*, 275 F.R.D. at 393 (class actions "may be the 'only practicable means of enforcing investors' rights.'") (citations omitted).  Finally, there is no reason to expect any difficulty in managing this case as a class action.  Indeed, class actions of this size and complexity are common in securities cases.

## II. Pomerantz Should Be Appointed Class Counsel.

In appointing Class Counsel, a court should consider:

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).   Pomerantz is eminently qualified to serve as Class Counsel.

Established in 1940 by the late Abraham L. Pomerantz, the recognized "Dean of the Class Action Bar," Pomerantz has litigated securities fraud cases for nearly seventy-five years and set important precedents.  As lead counsel, the firm has a proven track record of achieving results for classes, recovering over $1 billion dollars on their behalf over the years.  *See, e.g., In re Comverse Technology, Inc. Sec. Litig.*, No. 06-cv-1825, Dkt. No. 347 (E.D.N.Y June 24, 2010) ($225 million settlement); *In re Charter Communications, Inc. Sec. Litig.*, No. 02-cv-01186-CAS (E.D. Mo.) ($146.25 million class settlement); *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450-CRN (N.D. Ill.) ($45 million settlement); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, No. 13-cv-157-AWA, Dkt. No. 204 (E.D. Va. Nov. 17, 2016) ($43 million settlement).

Pomerantz has vigorously represented the Class for more than three years, including the investigation and filing of factually detailed complaints, successfully procuring the reinstatement of the Class's claims, and engaging Defendants in discovery.  Pomerantz will continue to pursue this action and expend resources as necessary to promote the interests of the Class.

In addition, Shapiro Haber & Urmy has extensive experience in securities class actions (Silverman Decl., Ex. C) and has served as Liaison Counsel for Lead Plaintiffs for more than three years.  Thus, Shapiro Haber & Urmy should be appointed Liaison Counsel for the Class.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court issue an Order: (1) certifying this action pursuant to Rule 23 as a class action and certifying the Class defined herein; (2) appointing the Plaintiffs as the Class Representatives; (3) appointing Lead Counsel as Class Counsel; (4) appointing Shapiro Haber & Urmy LLP as Liaison Counsel for the Class and (4) granting such other and further relief as the Court may deem just and proper.


Dated:  June 29, 2017                                      Respectfully submitted,


                                                           */s/ Adam M. Stewart*_____
                                                           Edward F. Haber (BBO #215620)
                                                           Adam M. Stewart (BBO #661090)
                                                           **SHAPIRO HABER & URMY LLP**
                                                           Seaport East
                                                           Two Seaport Lane
                                                           Boston, MA 02210
                                                           Tel. (617) 439-3939
                                                           Fax (617) 439-0134

                                                           **POMERANTZ LLP**
                                                           Patrick V. Dahlstrom, *pro hac vice*
                                                           Joshua B. Silverman, *pro hac vice*
                                                           Louis C. Ludwig, *pro hac vice*
                                                           10 South LaSalle Street, Suite 3505
                                                           Chicago, IL 60603
                                                           Telephone: 312-377-1181
                                                           Facsimile:  312-377-1184

                                                           **POMERANTZ LLP**
                                                           Marc I. Gross
                                                           Jeremy A. Lieberman, *pro hac vice*
                                                           600 Third Avenue, 20th Floor

19

New York, NY 10016
Tel. (212) 661-1100
Fax (212) 661-8665

**Counsel for Lead Plaintiffs and the Class**

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

("NEF") on this June 29, 2017.

_**/s/ Adam M. Stewart**_

Adam M. Stewart